No. 1830
Second Circuit

W. S. PERRY v. FRIEND SHOCKLEY

(October 21, 1925, Opinion and Decree)

(*Syllabus by the Editor*)

1. Louisiana Digest—Mandate—Par. 73, 74, 76.

Where the testimony clearly shows that wagons belonging to A were sold by B to C without A's authority, the purported sale will not give ownership to the purchaser C.

2. Louisiana Digest—Transaction or Compromise—Par. 8.

A transaction or compromise proposed between B and C to which A was not a party will not bind A in any way.

3. Louisiana Digest—Sales—Par. 83, 76.

One who purchased wagons from another who had no authority to sell them will not be entitled to money spent for repairs to make the property fit for his use upon his returning the wagons to the owner.

Appeal from Third Judicial District Court of Louisiana, Parish of Bienville. Hon. J. E. Reynolds, Judge.

This is a suit coupled with a writ of sequestration for possession of two wagons.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

J. Rush Wimberly, of Arcadia, attorney for plaintiff, appellee.

Goff & Barnette, of Arcadia, attorneys for defendant, appellant.

ODOM, J. Plaintiff brings this suit asking to be adjudged the owner of two log-wagons in the possession of and claimed by the defendant and to have them restored to his possession.

Upon his allegation of ownership of the said log-wagons and of the illegal possession thereof by defendant, a writ of sequestration was issued and the wagons were seized.

Defendant answered, denying plaintiff's ownership of the wagons, but admitted that he was in possession of them and further:

"Shows that he acquired the two log-wagons sued for by contract of exchange with J. B. Starnes of El Dorado, Arkansas, some months ago, having given the said J. B. Starnes two four-wheel log-wagons and twenty ($20.00) dollars in cash for said wagons sued for."

He further pleads that he acquired said wagons in good faith, believing said Starnes was the owner thereof; but that since has learned that Starnes was the duly authorized agent of plaintiff and was acting as his agent in selling the wagons, and that plaintiff, having constituted said Starnes his agent with authority to sell,

"He is now estopped from disputing the authority of the said Starnes in selling said wagons to defendant".

He further alleges that, prior to the filing of this suit, the plaintiff brought suit in the magistrate's court for the recovery of the wagons and had the same seized and that he was damaged by said seizure in the sum of $75.00 on account of the loss of the use thereof and loss of time in carrying them to court and that he has been damaged in the further sum of $50.00 by the seizure of the said wagons under the writ issued in this case on account of loss of time and the use of them, and that he has been forced to pay an attorney $35.00 to defend this suit, making in all $160.00, for which amount he asks judgment in reconvention.

In the alternative, he asks to be paid $125.00 for repairs on the wagons in case the court should hold that the plaintiff is the owner of them.

The case went to trial on the issues thus

made and there was judgment in favor of the plaintiff decreeing him to be the owner of the wagons, sustaining the writ of sequestration and ordering the wagons restored to his possession.

The defendant has appealed.

The testimony shows that the plaintiff, Perry, was the owner of the two log-wagons in dispute and that he left them on a certain lot at or near the city of El Dorado, Arkansas, which lot was occupied and used by J. B. Starnes.

The plaintiff testifies that he left the wagons on the lot and told Starnes not to let anyone take or interfere with the wagons during his absence.

He states specifically that he gave Starnes no authority either to use or dispose of the wagons in any way, but, on the contrary, states that he told him not to dispose of them.

It seems that a short time after Perry left the wagons Starnes traded them to Shockley, the defendant in this case. Shockley claims that he traded for the wagons in good faith, believing that Starnes had a right to dispose of them.

Starnes was called as a witness on behalf of the defendant and his testimony is to the effect that the wagons were left in his charge, but he does not state that the plaintiff, Perry, gave him specific authority to dispose of them.

The testimony, therefore, makes it perfectly clear that the wagons were disposed of by Starnes without authority.

It therefore follows that the defendant, Shockley, obtained no valid title to them.

It appears that some time after the wagons had been delivered to the defendant by Starnes, Perry learned of the transaction and went to Shockley and informed him that the wagons were his property; that Shockley then told Perry of the trans-action he had had with Starnes and expressed his regret that there was to be a controversy over the question of ownership, and he says that Perry at that time specifically stated to him that he was not satisfied with the trade made by Starnes.

It seems that Shockley suggested that they send for Starnes in order that they might get the matter straightened out.

Later on Starnes went to see Shockley and the matter was discussed between the two and Starnes suggested that they get Perry and see if some compromise of the matter could not be effected.

The three, Perry, Shockley and Starnes, met later on and Starnes expressed to them his regret that a controversy had arisen over the ownership of the wagons and stated that he would be glad to see Perry and Shockley get together on some kind of compromise. Starnes then suggested that as a compromise of the matter he would purchase a new log-wagon to cost not less than $125.00 and deliver the same to the plaintiff, Perry, in the city of Shreveport.

The evidence shows that Perry agreed to accept this proposition, provided the new log-wagon should be delivered to him prior to the trial of this suit, which was then pending in the District Court.

It does not appear that Shockley had anything to do with the proposed settlement between Perry and Starnes. He was not to contribute toward the purchase of the new wagon. However, he did agree to advance Perry the sum of $30.00 to pay his expenses while going to El Dorado and Shreveport in the effort to get a new wagon.

The transaction with reference to a settlement of the suit was all between Starnes and Perry. The understanding was that if Starnes procured a new wagon and delivered it to Perry that Perry would be

satisfied; Starnes would keep the wagons which Shockley had traded to him and Shockley would keep the wagons which Starnes had turned over to him.

Counsel for defendant argue that on account of this proposed settlement Shockley was left out of the transaction altogether and thereby became the owner of the wagons which Perry now claims and that Perry should have pursued Starnes to force him to carry out the agreement which he had made.

We do not think, under the testimony, that Perry ratified the transaction between Starnes and Shockley so as to transfer the ownership of the wagons in dispute to Shockley. Starnes made the proposition that he would get a new wagon for Perry and Perry agreed to accept it and to dismiss the suit; but his acceptance of the proposition was based upon the purchase and delivery of the new wagon to him. He did not agree that Shockley should become the owner of the wagons that he claimed unless the new wagon was delivered to him.

The testimony shows that Starnes did not carry out the agreement, as he was not able to purchase the new wagon on account of not having the money; and Starnes testified that up to the trial of this case he had not been able to get the money and, of course, could not carry out his part of the agreement.

We do not think that this had the effect to transfer ownership of the two wagons from Perry to Shockley. Therefore, Perry was at the time of the trial of the suit the owner of said wagons.

Having reached this conclusion, all other questions raised in the suit are disposed of.

Shockley claims that he has been damaged by the seizure of the wagons. Of course, if Perry was the owner of the wagons he had the right to seize them.

Shockley claimed that he made repairs on the wagons while they were in his possession and that the wagons are now or were at the time of the trial of this suit in the District Court more valuable than when he got them, and he asked to be reimbursed the amount thus expended. Shockley does not say just what was done in the way of repairs on the wagons, except that he put a new coupling pole and a new screw on each one of them at a cost of $9.50 for each wagon. The testimony of Perry, the owner of them, is that they were in good condition when he left them with Starnes, except the coupling pole and the hounds on one of them were broken, and he says it would have cost but little to repair the wagon. Shockley, as already stated, does not state just what repairs he made, except as to the coupling pole and the screw, nor does he make it clear when the repairs became necessary or when they were made, and so far as the court is informed some of the repairs which he made may have become necessary on account of the usage which he was making of the wagons. He was using them all the time to haul logs and some repairs to wagons used for that purpose must be anticipated all the time they are being so used, especially to old ones.

An evicted purchaser is never entitled to recover amounts which he has spent for improvement which are necessary to make the property fit for his use.

Smalley vs. Creditors, 3 La. 387.

As a matter of equity, we doubt if defendant should recover for these repairs, as he has constantly used the wagons for several weeks and for the same length of time the owner has been deprived of the use of them and has had to lease other wagons for his use.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.

REYNOLDS, J., recused.